TEST OIL COMPANY, *a Corporation*, v. ISAAC V. LaTOURETTE *et al.*

(Filed September 5, 1907.)

(91 Pac. 1025.)

1. **COVENANTS—Construction—Restrictions Not Favored.** Restrictions and prohibitions of the use of real property are not favored in the law, and the terms of such covenants will not be enlarged by implication, but confined to their accepted usage and the clear intention of the parties expressed therein.

2. **SAME.** The intention of the parties, being clearly expressed in the terms of a covenant to prohibit the drilling of oil and gas wells upon a certain tract in all deeds for the conveyance of any and all portions thereof, will not be enlarged by implication to include the prohibition in a lease on said tract.

3. **SAME—Deed—Lease—Covenant Construed.** The following covenant in an oil and gas lease, being a restriction upon the alienation of the land and clearly expressing the intention of the parties, will be strictly construed: "Said first parties hereby further agree that they will in and by any deed hereafter executed by them or either of them for any part of said La Tourette's Second Addition to said town of Cleveland prohibit any drilling for oil or gas on any land so hereafter conveyed in said Second Addition." Held, that the general usage and acceptation of the term "deed" in the above clause clearly expressing the intention of the parties, did not include "lease," and thereby prohibit the first parties from leasing said tract for the purpose of drilling oil and gas wells thereon.

(Syllabus by the Court.)

*Error from the District Court of Pawnee County; before Bayard T. Hainer, Trial Judge.*

Affirmed.

*George & Julian* and *Biddison & Eagleton,* for plaintiff in error.

*Sornborger & Williams* and *Wrightsman & Diggs,* for defendants in error.

Opinion of the court by

GARBER, J.: On January 27, 1905, the defendants, Isaac V. LaTourette and his wife, executed and delivered to John L. Moran

what is commonly known and designated as an oil and gas lease upon a certain portion of the northwest quarter of section nine (9), in township twenty-one (21) north of range eight (8) east I. M., which tract, so far as the particular description is relative to this case, lies immediately east of the east line of what is known as "La Tourette's Second Addition to the town of Cleveland," in Pawnee county, Oklahoma Territory (which tract hereafter will be designated as "Second Addition"). On the 6th day of March, 1905, Moran assigned his lease to the plaintiff herein, the Test Oil Company, and on the 8th day of March, 1905, the lease and the assignment thereof was filed for record in the office of the register of deeds of Pawnee county, Oklahoma Territory. On the 8th day of March, 1905, La Tourette and wife executed and delivered a second oil and gas lease to S. W. Lawrence covering a certain tract lying immediately west of the east line of Second Addition, excepting certain lots previously sold by La Tourette, but which are not material to description or issue in this case. Subsequently, Lawrence assigned an undivided one-half interest to the defendants M. M. and S. H. Sornborger, as Sornborger & Brother, and to the defendant Melrose Oil Company.

The following diagram fairly represents the location of the lands covered by the leases of the respective parties to this controversy, in so far as they are involved in this cause:

| Town of Cleveland | La Tourette's Second Addition. | E. Line of Second Addition | Part of Test Oil Co.'s Leasehold E. of La Tourette's Second Addition, and N. of La Tourette's addition. | TEST OIL CO.'S LEASEHOLD. |
| Defendant's Leaseholds. | | | | |
| La TOURETTE'S ADDITION. | | | | |

The boundary line between the tract leased to the plaintiff and that leased to the defendants is the east line of Second Addition. Plaintiff's lease also includes a small tract in the northwest corner of the tract designated as defendants' leasehold, but in no way affects the issue in this case.

The defendants having proceeded to drill wells for oil and gas on the tract of land covered by the lease known as Second Addition, the plaintiff brought this action to restrain and enjoin each and all of them from drilling or attempting to drill or permitting other persons, companies, or corporations to drill any oil or gas wells upon said tract, excepting certain lots therein described, and from taking or marketing any oil or gas from any well or wells that may have been drilled by them, other persons, companies, or corporations under and by virtue of any right which said defendants may have obtained to said Second Addition, alleging, substantially, that the tract known as Second Addition, excepting lots therein described, was so situated with reference to the tract covered by the lease assigned to the plaintiff that if any oil or gas well or wells were drilled thereon, or oil or gas taken therefrom, the oil and gas would be drained from under the tract covered by the lease assigned to the plaintiff to its irreparable injury and damage, and that upon the final hearing of this action plaintiff asked that the defendants be perpetually enjoined from drilling upon said tract of land; and that an accounting might be had of any and all damages which the said plaintiff sustained by reason of producing gas or oil wells which the defendants may have drilled. A temporary restraining order granted in the probate court, on motion of defendants, was dissolved in the district court upon the ground that the petition did not state facts sufficient to constitute a cause of action. From the judgment of dissolution, this appeal was taken.

An examination of the petition and motion discloses that the controversy in this case is waged over the construction of plaintiff's lease, and the validity of a certain clause therein. For perspicuity and intelligible construction, we incorporate the lease

entire, which reads as follows, omittings acknowledgements, assignments, and recording memoranda thereon:

### "OIL AND GAS LEASE.

"Agreement, made and entered into on the 27th day of January, A. D. 1905, by and between Isaac V. La Tourette and his wife, Armeda H. La Tourette of the town of Cleveland, county of Pawnee and territory of Oklahoma, parties of the first part, and John L. Moran, of Bartlesville, in the Indian Territory, party of the second part,

"Witnesseth: That the said parties of the first part for and in consideration of the sum of sixteen hundred and fifty dollars to them in hand well and truly paid by the said party of the second part, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, on the part of the said party of the second part to be paid, kept, and performed, have granted, demised, leased and let and by these presents, do grant, demise, lease and let unto the party of the second part, his heirs, executors, administrators or assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe line and of building tanks, stations and structures thereon, to take care of said products all that certain tract of land situated in Pawnee county, territory of Oklahoma, to wit: E. 1-2 of S. 1-2 of N. W. 1-4 sec. 9, town. 21, range 8 east —— acres, all that part of the west half of the south half of the northwest quarter of section 9, town. 21, range 8 east lying north of La Tourette's Addition to the said town of Cleveland and east of La Tourette's Second Addition to said town of Cleveland, and a tract of land 100 feet north and south and 127 feet east and west lying in the northwest corner of said S. 1-2 of N. W 1-4 of said sec. 9, town. 21, range 8, east —— acres.

"It is agreed that this lease shall remain in force for the term of one year from this date and as long thereafter as the above described premises shall be operated for the purpose of producing oil or gas or so long as oil or gas is produced in paying quantities.

"In consideration of the premises the said party of the second part covenants and agrees: 1st, To deliver to the credit of the first party, their heirs, assigns, executors and administrators, free of cost in the pipe line to which the wells may be connected the equal one-sixth part of all the oil produced and saved from the leased premises; 2nd to pay one hundred dollars per year for

the gas from each and every well drilled on said premises, the product from which is marketed and used off the premises, said payment to be made on each well within sixty days after commencing to use the gas therefrom, as aforesaid, and to be paid yearly thereafter while the gas from the said well is used. In case gas is found in marketable quantities, parties of the first part shall have gas for domestic purposes free by making their own connections.

"Second party covenants and agrees to locate all wells so as to interfere as little as possible with the cultivated portion of the farm, and well to be begun on said tract above described as 100 by 127 feet within thirty days after the well now being drilled on Jordan lease is completed. And further to complete a well for oil and gas on said premises within ninety days from the date hereof or pay at the rate of twenty-five dollars in advance for each additional thirty days such completion is delayed from the time above mentioned for the completion of such well until a well is completed. Such payment may be made direct to the lessors or by check mailed to them at Cleveland, Oklahoma Territory, or by check deposited to the credit of Isaac V. La Tourette in the First National Bank in said town of Cleveland.

"No well to be drilled on said land nearer the section line than a point twenty-five feet from the west line on Breer and Anderson lot. Said first parties hereby further agree that they will in and by any deed hereafter executed by them or either of them for any part of said La Tourette's Second Addition to said town of Cleveland, prohibit any drilling for oil or gas on any land so hereafter conveyed in said Second Addition.

"It is agreed that the said second party is to have sufficient water from the premises to run all necessary machinery; at any time to remove all machinery and fixtures placed on said premises; and further upon the payment of one dollar at any time by the party of the second part his heirs, executors, administrators, or assigns, to the parties of the first part, their heirs or assigns, said party of the second part, his heirs, executors, administrators or assigns, shall have the right to surrender this lease for cease and determine and this lease become absolutely null and void.

"Witness the following signatures and seals.

| | |
|---|---|
| "Isaac V. LaTourette, | [SEAL] |
| "Armeda H. LaTourette, | [SEAL] |
| "John L. Moran, | [SEAL] |

"Witness:   Tom George,
            "Julia Rogers."

An examination of the essential conditions of the above lease discloses that, for and in consideration of the payment of sixteen hundred and fifty dollars ($1,650.00), LaTourette and wife leased unto Moran or his assigns a certain tract of land (not including any part of Second Addition leased by these defendants), therein described, for the sole and only purpose of mining and. operating for oil and gas and of laying pipe lines and building tanks, stations, and structures thereon for the purpose of taking care of the product. Said lease was for the period of one year from the date thereof, and thereafter as long as the leased premises should be operated for the purpose of producing oil or gas, or as long as oil or gas was produced thereon in paying quantities. An additional consideration to the lessor, or his assigns, was the delivery in the pipe line to which the wells might be connected the equal of one-sixth of all the oil produced and saved from "the leased premises," and one hundred dollars ($100.00) per year for the gas from each and every well drilled on said premises, the product of which was marketable. An additional rental was "sufficient gas for domestic purposes to the lessor, or his assigns, in case gas was found in marketable quantities." Payment of twenty-five dollars (25.00) for each additional thirty days, after a certain period, was stipulated to be paid "direct to the lessors," or by mailed check, or deposit in First National Bank at Cleveland. Party of the second part, or his assigns, reserved the right to remove all their machinery and fixtures, and upon the payment of one dollar ($1.00) at any time to "surrender this lease, and this lease to become absolutely null and void." Said lease contained the further covenant, and the one upon which plaintiff relies, that "said parties hereby further agree that they will in and by any deed hereafter executed by them or either of them, for any part of the said LaTourette's Second Addition to the said town of Cleveland, prohibit any drilling for oil or gas upon any land so hereinafter conveyed in said Second Addition." It is not alleged that the defendants ever trespassed upon the leased land of the plaintiff, or that they ever drilled, or attempted to drill, wells thereon, or interfered in any way with

plaintiff's possession. Plaintiff alleges, however, that the defendants have and will continue to drill oil and gas wells upon the tract leased to the defendants and known as Second Addition and bases its action to enjoin the defendants from drilling upon said tract upon that clause in their lease containing the restriction upon the alienation of any portion of Second Addition by deed, and proceed upon the theory that it is a covenant which runs with the land, binding all subsequent purchasers or lessees, and prohibits LaTourette and wife, and all persons claiming through or under them, from in any way exploiting the gas and oil supply which may lie underneath the surface of defendant's leased premises.

As all the agreements between the parties are merged in the written lease, plaintiff's contention must stand or fall upon the construction of its terms. It must be conceded that the fee of the tract known as Second Addition and the right to possession, excepting lots sold, remained in LaTourette and wife without restriction, except in case of transfer by deed, and that plaintiff had no lease thereon. They could, if so disposed, drill a thousand wells upon Second Addition without violating any of the conditions of plaintiff's lease, and, likewise, could they do so by their agents. The oil and gas beneath the surface belonged to them so long as it remained there and was under their control, but in case it should escape their ownership would cease. If, by reason of wells drilled on plaintiff's leased premises, the oil or gas under Second Addition would flow therein and become subjected to the control of plaintiff, it would then become the property of plaintiff; and the same would be true of Second Addition in wells drilled by LaTourette and wife, or lessees. It is the subjection to control that determines the ownership. *Westmoreland & Cambria Natural Gas Co. v. Ira DeWitt et al.*, 130 Pa. St. 235. 5 L. R. A. 731.

Plaintiff claims, however, that LaTourette and wife could not lease Second Addition to anyone for oil or gas purposes, because the restriction by deed included restriction by lease, and that the restriction was for a valuable consideration, and for their especial protection. With this construction we can not agree. It is cer-

tainly a natural and warranted deduction from the language of the clause upon which plaintiff relies, and the peculiar situation and relationship of the parties, to say that their intention is clearly expressed in the terms of the covenant limiting the restriction to the conveyance by deed only. Ordinary business precaution would reserve Second Addition for LaTourette and wife, and, being interested to the extent of one-sixth of the oil output on plaintiff's leased premises adjoining, it was only natural for the lessee to conclude that interest in the output of the production on both tracts by the lessor would preserve his (the lessee's) interests, and that restriction by deed would prevent the drilling of numerous wells by different lot owners who would not be interested in the amount of production on plaintiff's tract. If this was not the intention of LaTourette and wife, why did they reserve Second Addition? The reservation must have been for some purpose, and what would be more natural for them than to reserve Second Addition to themselves for their own exploitation, or to await the developments of the oil and gas supply on plaintiff's leased premises? If the lessee desired protection from the business sagacity of the owners to the extent herein demanded by his assignees, he should have leased the entire tract, or conditioned his lease with a covenant that LaTourette and wife should not drill wells on Second Addition, or permit others to do so for them, or in case of the leasing of said tract it should be with the same restriction as that provided for in case of conveyance by deed. Not having done so, the court is now called upon to say that because LaTourette and wife covenanted that, in case they should deed any part of Second Addition to other parties, they would in such conveyance prohibit their grantee from drilling for oil or gas, they have thereby in legal effect prohibited themselves from drilling on Second Addition or leasing the same to others without restricting them from drilling thereon. The terms of the covenant will not permit of such a construction. They are plain, unambiguous, and certain. Even in case of doubt such a construction would be denied. In this country land is one of the chief objects of trade and investment. "Mud and civilization

go together." As the latter advances, the transfer of the former becomes more frequent. Just in the degree that the temporary owner of a tract of land is permitted to impress his notions or caprices upon the fee restricting its future alienation, just in that degree does it hamper the freedom and facility of its exchange in trade and destroy that confidence which has given it the reputation of being the subject of safe and sound investment. Hence restrictions upon the alienation of the fee in land are repugnant to trade and commerce, and are looked upon with disfavor by the law. Nothing will be taken by implication or intendment. New conditions will not be inserted by construction. The expression of the intention of the parties will be gathered strictly from the terms employed, and the inquiry at the close of the examination will be: "Is it so nominated in the bond?"

The law is jealous of a claim to an easement, and the party asserting such a claim must prove his right clearly. It can not be established by intendment or presumption. *Minneapolis Western R. Co. v. Minneapolis, etc., Co.,* 58 Minn. 128; *Polson v. Ingram,* 22 S. C. 541. In *Clark v. DeVoe,* 124 N. Y. 120, 21 Am. St. Rep. 652, it was held that only by the use of plain and direct language on the part of the grantor should it be held that he created a right in the nature of an easement and attached to one parcel of land as the dominant estate and made the other servient thereto. It is contrary to the well recognized business policy of the country to tie up real estate where the fee is conveyed with restrictions and prohibitions as to its use, and hence, in the construction of deeds containing restrictions and prohibitions as to the use of property by the grantee, all doubts should, as a general rule, be resolved in favor of a free use of property, and against restrictions. *Hutchinson et al. v. Ulrich et al.,* 145 Ill. 336, 21 L. R. A. 391. Covenants restraining the use of real property, although not favored, will nevertheless be enforced by the courts, where the intention of the parties is clear in their creation and the restrictions or limitations are confined within reasonable bounds. In construing such covenants, effect is to be given to the intention

of the parties as shown by the language of the instrument, considered in connection with the circumstances surrounding the transaction and the object had in view by the parties; but all doubts must be resolved in favor of natural rights and the free use of property, and against restrictions. 11 Cyc. 1077, 1078, and authorities therein cited.

It is conceded that there has been no conveyance by deed of any portion of Second Addition to the defendants herein, but that their right to drill wells thereon is by virtue of the terms and conditions of an oil and gas lease from LaTourette and wife to S. W. Lawrence, similar in form to the lease of plaintiff as above set forth. Numerous authorities are cited by counsel as supporting their contention that the term "deed" in the restrictive clause should be construed to prohibit by "lease." Under various statutes, and within its generic sense, the courts have frequently held that the term "deed" included a mortgage, bond, will, and other instruments in writing under seal; but the term "deed" is more frequently used, however, in a more limited sense as meaning a written instrument duly acknowledged by competent parties conveying the title in land. A stipulation to give a deed to land contracted to be sold would certainly not be fulfilled by the delivery of a lease. Blackstone says that "deeds" serve to convey the property of lands and tenements from man to man, and that they are commonly denominated "conveyances." The word "deed," as used in the contract whereby one of the parties obligates himself to make a deed to the other, imports that the conveyance shall give a sufficient title. *Parker v. McAlester*, 14 Ind. 12, 16. The word "deed" is an apt word to signify the transmission of real estate. *Dunham v. Marsh*, 52 N. J. Eq. 256, 30 Atlantic, 473, 474. The common usage and acceptation of the term "deed" undoubtedly means the conveyance of real estate, and that was the sense in which it was used in plaintiff's lease. Said first parties agree that they will in and by any deed hereafter executed prohibit any drilling for oil or gas on any land so hereafter conveyed in said Second Addition, is

the substantial language of the clause. Conveyed in what manner? By "deed," not by "lease."

A deed of conveyance is a sealed writing, signed by the party to be charged, which evidences the terms of the contract between the parties, whereby the title to real property is transferred from one to the other *inter vivos,* and this is the more usual and specific, though somewhat restricted, meaning of the word "deed." Am. & Eng. Encycl. of Law, 91; Bouvier's Dictionary; Abbott's Law Dictionary; Anderson's Law Dictionary.

In *Eaton v. White,* 18 Wis. 519, it was held that a deed was an instrument in writing duly executed and delivered conveying real estate.

In *Lockridge v. McCommon,* 90 Tex. 234, 38 S. W. 33, a deed was held to be the act or instrument by which property in real estate is conveyed.

In *Dudley v. Sumner,* 5 Mass. 438, 472, a deed was said to be a method by which the title and possession of real estate is transferred from one person to another.

In *Consolidated Coal Company v. Peers,* 150 Ill. 344 a written agreement by the owner of coal land giving to another the exclusive right to mine coal thereon for a term of years was held to be a "lease."

In *Malcomson v. Vappoo Mills* (U. S.) 85 Fed. 907, 908, an instrument which gives the exclusive right to enter upon lands and to dig and mine phosphate, rocks, and other minerals, and to carry them away and sell for his own use for a term of years on a certain royalty, was held to be a "lease."

In *Harris v. Ohio Oil Company,* 57 Ohio St. 118, 48 N. E. 502, 506, it was said: Where the owner of land, for a valuable consideration, grants the land described to the other party to a contract for the purpose and with the exclusive right of drilling and operating for oil and gas for a certain number of years, the instrument is a "lease" on the land for the purpose and period limited therein.

In *Young v. Ellis,* 91 Va. 297, 21 S. E. 480, it was said: The

owners of land granted to another the right to enter thereon to test and search for minerals and oil and to mine and quarry thereon; the second party to have the right to erect buildings and machinery for work in mining, and to pay twenty-five dollars ($25.00) per year, if minerals were not mined, and to pay a royalty on all ores shipped. The instrument was termed a "lease" and was to continue ninety-nine (99) years. *Held*, that the instrument was a "lease."

From the above authorities, which might be multiplied many times, it is clearly seen that the oil and gas lease from LaTourette and wife to S. W. Lawrence and his assigns was such an instrument as the courts will hold to be a "lease," as contradistinguished from a "deed," and therefore did not come within the clause restricting the conveyance of any portion of Second Addition by deed prohibiting grantees from drilling for oil or gas thereon. The conclusion upon this question being decisive of the case, it is unnecessary to determine whether or not the clause in plaintiff's lease is such a restriction upon the conveyance of land as would be void as against public policy, or whether or not it is such a covenant as would run with the land binding the subsequent owners thereof, or whether or not it was a personal one between the original parties thereto.

The judgment of the lower court dissolving the injunction will therefore be affirmed.

Hainer, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.