## CHRISTIE et al. v. LYONS et al.

No. 24527.   May 28, 1935.

Rehearing Denied July 9, 1935.

R. S. Howe, Lester & Briggs, and R. A. Jackson, for plaintiffs in error.

Wilson & Wilson, for defendants in error.

BAYLESS, J. This is an appeal from the district court of Oklahoma county, Okla. It is necessary to give a short history of the case in order that it can be better understood.

Certain residents of block 42, containing 32 lots, and block 50, containing 6 lots, in Maywood addition to the city of Oklahoma City, Okla., executed and circulated an agreement to restrict against the sale, lease, or gift of the property within said two blocks to persons of African descent for a period of 99 years. The agreement contained the following provisions: "This contract constitutes a mutual covenant running with the land, * * *" and "This contract shall take effect and be in full force when executed by the owners of nine-tenths of the lots in said 42 & 50 block, and may be placed of record. * * *" When the owners of a percentage of the lots (we shall adopt the figure 88.5 per cent. for convenience) had executed the agreement, it was recorded. At that time the lots involved in this action, the west 50 feet of the west 100 feet of lots 4, 5, and 6, block 50, were owned by one Parsons, but one Carmichael was on a trade to buy them. To those who had signed, it appeared certain that Carmichael would buy, and would join in the agreement. Carmichael bought these lots, and we shall give them an arbitrary value of 2 per cent. for the purposes of this opinion. He and his wife then executed a supplemental agreement by which they adopted the restrictions as to their lots. It would thus appear that there was of record the concurrent execution of this agreement by the owners of 90.5 per cent. of these lots, except for this fact. J. L. Gray, the owner of certain lots to which we shall give an arbitrary value of 2 per cent., had executed the agreement, but sold his lots to Opal Simpson before either of the agreements were recorded. This condition existed for about two years. D. P. Brown, the owner of the lots involved herein, in 1929, contracted to sell them to one Lyons, a negro. Lyons refused to perform the contract. Brown brought an action for the specific performance of the contract, and Lyons defended upon the ground that this restrictive covenant prevented Brown conveying title to this property to Lyons. Brown replied that the covenant never became effective, and was void. Judgment was rendered in June, 1929, requiring Lyons to perform the contract, the court adjudging the covenant ineffective. March 7, 1930, certain other property owners in these blocks filed in the action a petition in intervention, in which they sought permission to intervene and to have said judgment set aside, and to have a trial of the matter in order that they might uphold the covenant.

A demurrer to this petition was filed, and was heard and taken under advisement by the court. An amended petition was then filed. The record does not disclose that the demurrer was ever acted upon, or that any preliminary attack was made upon the amended petition. Lyons, and one whom he represented, filed an answer and the matter was tried. No attack was made upon the interest of interveners as proper parties, nor upon the procedure adopted by them to gain a hearing.

The sole question involved is the validity of the agreement. Lyons contends that said agreement never became effective according to its own terms, there never having been the concurrence of the owners of 90 per cent. of the lots. This contention turns upon the effect of the sale of the 2 per cent. by Gray.

The agreement bearing Gray's signature among the 88.5 per cent. was filed June 11, 1927. Gray had conveyed his 2 per cent. to Opal Simpson May 4, 1927, so that as the ownership stood June 11, 1927, the agreement only represented 86.5 per cent. of the ownership. Thereafter, on July 11, 1927, when Carmichael filed his agreement covering the 2 per cent. purchased by him it brought the concurrence of owners up to 88.5 per cent. only and not 90.5 per cent.

Opal Simpson, who bought from Gray, gave testimony at the trial from which the following may be gathered. Gray told him of executing the agreement; told him that it was binding and effective upon him as grantee; that he was in sympathy with the restrictions and acquiesced therein; and would have executed the agreement himself had he been given the opportunity. Most of Simpson's testimony was stricken by the trial court, but its effect is gathered from that which was admitted, that which was stricken, and the statements of counsel to the court. Interveners contend that all of his testimony should have been admitted and given the effect of ratifying the agree-

ment and supporting judgment in their favor. Lyons did not dispute the truth of Simpson's testimony, but contended that it was not competent, and that it was too late to amend or bolster up the agreement.

The rule of construction applicable to covenants restricting the use or sale of real estate is one of strictness. This court said in the case of Test Oil Co. v. La Tourette, 19 Okla. 214, 91 P. 1025, the following:

"It is contrary to the well-recognized business policy of the country to tie up real estate where the fee is conveyed with restrictions and prohibitions as to its use and hence, in the construction of deeds containing restrictions and prohibitions as to the use of property by the grantee, all doubts should, as a general rule, be resolved in favor of a free use of property, and against restrictions. Hutchinson v. Ulrich, 145 Ill. 336, 21 L. R. A. 391. Covenants restraining the use of real property, although not favored, will nevertheless be enforced by the courts, where the intention of the parties is clear in their creation and the restrictions or limitations are confined within reasonable bounds. In construing such covenants effect is to be given to the intention of the parties as shown by the language of the instrument, considered in connection with the circumstances surrounding the transaction and the object had in view by the parties; but all doubts must be resolved in favor of natural rights and the free use of property, and against restrictions. 11 Cyc. 1077, 1078 and authorities therein cited."

See, also, 18 C. J. page 387, notes 19 and 20; and 7 R. C. L. page 1115, sec. 31; and Highland Realty Co. v. Groves, 130 Ky. 374, 377, 113 S. W. 420.

We are of the opinion that the facts in this case, considering the language of the agreement as to when it shall become effective, are sufficiently analogous to the case of Schefer v. Ball, 53 Misc. 451, 104 N. Y. Supp. 1028, to warrant us adopting the reasoning of that case. Fifteen property owners in a certain area executed an agreement containing building and business use restrictions upon their property. The agreement provided it should become effective when signed and acknowledged by all of the owners. Fifteen signed, but only twelve acknowledged. All signers seemed to observe the restrictions for some years, when efforts were then made to violate its terms. Other owners then attempted to amend the agreement and to seek injunctive relief. This was denied. The Supreme Court of New York, by its language, made plain that among the reasons for not enforcing the covenant was the one that it was not effective at the time it was recorded because

it was not executed strictly according to its terms; and, another, the changes which had taken place in the meantime in the ownership of the lots affected.

We therefore hold that there was never a concurrence of the owners of nine tenths of the lots in executing the agreement, and that the trial court was correct in refusing interveners relief.

Judgment affirmed.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS and CORN, JJ., concur.