### CAUDLE et al. v. OLIVE et al.

No. 28689.   Oct. 31, 1939.

John Brett, of Oklahoma City, for plaintiff in error.

J. Walker Field, of Oklahoma City, for defendant in error.

RILEY, J.   This is an appeal from a judgment and decree denying plaintiffs in error relief in an action by plaintiffs in error to enjoin defendants in error from conveying property to a person or persons of African descent, under an alleged restriction agreement of owners of certain lots.

Agreement relied upon is in form the identical agreement as that involved in Veal v. Hopps, Pasell v. Olive, 183 Okla. 116, 80 P.2d 275.   As pointed out therein, it is a contract entered into by certain lot owners in block N, Oak Park addition to Oklahoma City, providing that no one of the signers thereof, his or her heirs, executors, administrators or assigns will ever sell, lease, or give away any real property in said block or any interest therein to any person of the Negro or African race or to any corporation the majority of whose stockholders are of Negro blood.   The covenant is made to run with the land and continue for a period of 99 years.

It also provides:

"This contract shall take effect and be in full force when executed by the owners of nine-tenths of the lots in said block, and may then be placed of record; and shall continue in force for a period of 99 years from the date of said filing; and any and all other lots in said block may be brought under this agreement subsequently, the execution thereof by the owners of such lots, bringing them under all the obligations and entitling them to all the privileges of the first signers hereto."

The original contract was signed by persons purporting to be the owners of 37 of the 40 lots in said block and was placed of record in October, 1926. .

In Veal v. Hopps and Pasell v. Olive, supra, it was found and held by the trial court that said instrument was never executed by owners of nine-tenths of the lots in said block, and that said restrictive covenant was null and void and of no effect, and in no way binding on any of the property in said block, was in no way an inhibition or restraint against the sale, by the owners thereof, of any of the lots in said block to any person or persons of the Negro or African race. That judgment and decree was affirmed by this court in Veal v. Hopps and Pasell v. Olive. That would seem to be decisive of this case. However, it is said in the brief of plaintiff in error:

"This case should not be confused with prior cases lodged in this court involving this block because new and additional signatures have been obtained to the restriction contract, which we believe materially strengthens this case over prior cases filed in this court involving this same question."

No additional signers were obtained until July 20, 1936, when H. J. Muller and wife signed for lots 33 and 34.

On July 14, 1936, Belinda Caudle and Chas. W. Caudle signed for N.½ lots 19 and 20.

Prior to February, 1936, Freda Hopps had become the owner of lots 23 and 24. Mrs. Ora Orndorf signed the original covenant as owner of said lots. At the time she signed said covenant she owned only an undivided one-third interest in lots 23 and 24. The trial court held that her signature alone was insufficient to bind said lots. Plaintiffs in error contend that this was error because under the will of her deceased husband she was given power to sell said property for certain purposes.

There was no error in the holding of the trial court in this regard. Mrs. Orndorf was given power under the will to sell said property if necessary for her support and maintenance. This did not give her power to restrict that part of the property which went to the children. In case she did not sell, the children were entitled to receive the property at her death without restrictions on their right to sell. This left but 35 of the 40 lots, and without them the contract could not become effective. As to lots 39 and 40, the original covenant was signed by W. H. Dickson as the owner. He owned but an undivided one-fourth interest therein. This is in effect admitted by plaintiffs in error in the brief. In this connection plaintiffs contend that all the other signers had accepted the benefit of the contract for more than eleven years, and are therefore estopped to deny the validity of the contract. This same contention was made in Veal v. Hopps and Pasell v. Olive, supra, and was rejected by the court. This leaves but 33 lots.

At the time the original covenant was executed, Mrs. G. C. Meis signed as the owner of lot 18 and the west ½ of lot 17. She owned only an undivided one-third interest therein. In Veal v. Hopps and Pasell v. Olive, we held she had no authority at that time to bind said lots beyond the 1/3 interest owned by her. This left at most only 32 lots.

In July, 1936, she obtained an order from the county court authorizing her to sign for the other 2/3 interest owned by the minor children. But this was after Freda Hopps had become the owner of lots 23 and 24. These lots were not bound at the time Freda Hopps acquired title thereto. Veal v. Hopps, supra. Therefore, under Christie v. Lyons, 173 Okla. 158, 47 P.2d 128, the execution of the covenant by Mrs. Meis in July, 1936, did not make the covenant effective, because lots 23 and 24 had been taken out of the agreement at a time when 90 per cent. of the property was not bound.

Other signatures were obtained in 1936, but all were after lots 23, 24, 25, and 26, and 31 and 32, had been withdrawn by sale to persons not parties to the agreement. At no one time has there been a contract or agreement in existence sufficient to bind 90 per cent. or 36 of the 40 lots in the block. We do not hold, as is intimated in Veal v. Hopps, supra, that in order to make a covenant of this kind effective it must be executed by the required percentage of lot owners, by signatures attached to the same instrument, and after a less number had signed, and the agreement had been placed of record, other owners could not come in within a reasonable time by proper execution of the same agreement and make it effective. But we do hold that in order so to do the subsequent signatures must be obtained before a sufficient number of lots represented by the original instrument has passed into the hands of others not parties to the agreement so as to leave less than the required number, including the subsequent signers. Christie v. Lyons, supra. This not having been done in the instant case, the judgment must be, and is, affirmed.

BAYLESS, C. J., and OSBORN, GIBSON, and DANNER, JJ., concur.