GILLIAM et al. v. HALL et al.

No. 33017.   Nov. 10, 1947.

*186 P. 2d 652.*

Harold McArthur, of Tulsa, for plaintiffs in error.

Geo. W. Reed, Jr., and Frank Hickman, both of Tulsa, for defendants in error.

RILEY, J.   This action was commenced by Elmer Hall and 21 others who alleged they were the owners of certain real estate consisting of lots in T. Dickson, Hunter, and Broadview additions to the city of Tulsa. Plaintiffs brought the action against Walter R. Summers and 125 other persons, including A. O. Gilliam, J. E. Jenkins, and J. D. Watkins, all alleged to be owners of other lots within the additions.

The purpose of the action was to quiet title as against certain restrictions against the sale of lots within the additions to persons of African descent. Plaintiffs also prayed for injunction restraining the defendants from

interfering with plaintiffs in the sale of plaintiffs' lots to Negroes.

The restrictions complained of consisted of three separate agreements, each applying to a particular addition.

Plaintiffs alleged that they never signed any of the instruments; that defendants had executed such agreements and placed them of record in the office of the county clerk of Tulsa county; that the restrictive agreements, and each of them, contained a provision or declaration that it was the intent and purpose of the agreements that no person of any race other than the Caucasian or Indian races shall own, use, or occupy any building or lot in the additions except occupancy thereof by domestic servants of a different race domiciled with an owner or tenant; that defendants were contending and asserting that the restrictive agreements applied to all lots within the additions, whether the owners thereof had signed the same or not, and that plaintiffs were being prevented from selling their lots to persons of African descent.

Defendant Aileen P. McBride and four other defendants filed their separate answer admitting that they were owners of lots in Broadview addition and admitting that they had executed the restrictive agreement, and further alleging that the agreement was signed by them on condition that all the white property owners in the addition would sign same so that it would be a unanimous agreement; that all the white property owners in the addition did not sign same, but many refused so to do, whereby the consideration for the execution by answering defendants failed. They further alleged that since the execution and filing of the agreement, facts and circumstances as to the ownership of property in the addition had changed in that many of the lots and homes within the addition had been sold by their white owners to persons of the Negro race, and as a result, it had become impossible for answering defendants to sell their lots to persons of any race

other than the negro race. These defendants joined in the prayer of plaintiffs that the agreement be declared null and void.

Defendant Opal Powell and ten other defendants, alleging that they were owners of lots in Hunter addition, filed their answer substantially the same as that of defendants owning lots in Broadview addition, and prayed that they be released from the agreement.

Defendant Aileen P. McBride filed a separate answer alleging that she was the owner of lots in T. Dickson addition and lots in Broadview addition and admitting the execution by her of the restrictive agreements as applied to both additions, and setting up several additional alleged grounds of invalidity of the agreements, one of which was that the circulators or proponents of the agreements specifically represented to her that the agreements were not to be placed of record unless and until all white owners of lots in all three additions signed the agreements, and had promised her that if she would sign the agreements they would never be recorded until and unless they were executed by 100% of the white owners in all three additions, but that the agreements were placed of record when only some 60% to 70% of the owners of lots in said additions had executed them. This defendant also prayed for cancellation of record of the agreements as affecting her lots in both additions.

One plaintiff, J. E. Lillard, dismissed or withdrew from the action, asserting that he had not authorized any person or attorney to include his name as a party plaintiff in said action.

Defendants A. O. Gilliam, J. E. Jenkins, and J. D. Watkins filed their separate answer asserting insufficiency of the petition and denying generally.

The issues were tried to the court, resulting in a judgment and decree in favor of plaintiffs and the answering defendants who sought affirmative relief, canceling said restrictive agree-

ments as to the lots owned by plaintiffs and other answering defendants, and enjoining defendants from interfering with plaintiffs in the sale of their lots to persons of African descent. Defendants Gilliam, Jenkins, and Watkins appeal.

It is first contended that the court erred in overruling demurrer of plaintiffs in error to the evidence of plaintiffs below. This being an action of equitable cognizance, a demurrer to the evidence will not lie. But, treating the demurrer as a motion for judgment for plaintiffs in error on the pleadings and evidence, there was no error in the trial court in overruling the same.

The three restrictive agreements were properly before the court under the pleadings and evidence and their execution was not denied under oath. The three instruments are identical in form except as to the names of the several additions. The material part of each of said instruments reads as follows:

"Restrictive Agreement.

"We, the undersigned, being the owners of the lots and real estate in the T. Dickson Addition to the City of Tulsa, according to the recorded plat thereof, do hereby agree to and with each other, that we will not sell, convey, rent or permit the property hereinafter described to be sold, occupied, rented to or used by any negroes or person or persons of African descent, and that said property shall be used, owned and occupied by persons of the Caucasian and Indian race, and no other, . . . it being the intent and purpose of this restrictive agreement and covenant that no person or persons of any race or races, other than the Caucasian or Indian race shall own, use or occupy any building or lot in said addition, except this covenant and restriction shall not prevent occupancy by domestic servants of a different race domiciled with an owner or tenant. . . . ."

The record shows, and the trial court found, that owners of not to exceed 60% to 70% of the lots in the several additions executed or signed said agreements. The trial court held that by their terms the agreements called for the execution thereof by not less than 100% of the owners of lots in the additions.

Plaintiffs in error cite Lyons v. Wallen, 191 Okla. 567, 133 P. 2d 555, and cases therein cited, and particularly that part of the quotation from Vaughn v. Lyon, 122 Okla. 179, 252 P. 1088, that:

". . . In construing such covenants, effect is to be given to the intention of the parties as shown by the language of the instrument, considered in connection with the circumstances surrounding the transaction and the object had in view by the parties. . . . ."

Applying that rule, the first part of the agreement above quoted may be ambiguous as to what property was meant to be included or covered by the agreement wherein it says "that we will not sell, convey, rent or permit the property hereinafter described," etc. Standing alone, the words "property hereinafter described" might be construed as embracing all the property in the additions, or might be construed as applying only to the lots particularly described after the signature of each owner. But, considering the agreement as a whole and particularly the other part thereof above quoted where it says "it being the intent and purpose of this restrictive agreement and covenant that no person or persons of any race or races other than the Caucasian or Indian race shall own, use or occupy any building or lot in said addition . . ." it clearly shows that the intent and purpose of the restrictive agreements was to make them apply to every building and every lot in the addition. The purpose as a whole could only be accomplished by the owners of every lot and every building in the addition joining in the execution of the agreements. Such agreements are not favored in law; they are binding only upon the persons who sign them, their successors and assigns. Such agreements never become effec-

tive, even as to the signers, where they call for a certain number or certain per cent of the owners, unless executed by the specified number or percentage. Christie v. Lyons, 173 Okla. 158, 47 P. 2d 128; Veal v. Hopps, 183 Okla. 116, 80 P. 2d 275; Caudle v. Olive, 185 Okla. 596, 95 P. 2d 615.

There was also evidence that the persons who circulated or promulgated said agreements, in soliciting signers, represented that they were not to be effective until signed by a certain number or percentage of the owners of lots in the respective additions. Some of the witnesses testified 100%; some 95%; and some 75%. However, the evidence is in conflict as to such representations.

There was also some evidence to the effect that some of the parties interested asserted and contended that the agreements as signed and of record were to be binding upon the owners of all the property in the additions when signed by a majority and that they were intended to prevent sale of all lots in the additions, whether the owners thereof signed or not.

There was also much evidence of the change of conditions as found by the trial court in that the evidence showed that after the agreements were signed, a large number of lots within the additions had been sold to persons of African descent.

The court did not err in overruling the demurrer of plaintiffs in error to the evidence of plaintiffs below.

It is next contended that the decision of the court is not supported by sufficient evidence.

There is some conflict in the evidence concerning the representations made by the circulators of the agreements in an effort to secure signatures. But, as we view each agreement, it was, of itself, a representation that all the property owners must sign before it was to become effective. There is substantially no conflict in the evidence to the effect that persons of African descent had purchased unrestricted property in the additions. That evidence was material in that the record shows that a large area within the city, lying immediately north, northwest, and west of the three additions, was, and had been for a long time, owned and occupied exclusively by persons of African descent. The trial court found from the evidence that it would be unjust and inequitable to enforce the agreements even if they were effective. The decree is sustainable and affirmed.

DAVISON, V.C.J., and BAYLESS, GIBSON, ARNOLD, and LUTTRELL, J., concur.