### MAKINS v. SHELLENBARGER.

No. 19492. Opinion Filed June 24, 1930.

Commissioners' Opinion, Division No. 1.

Shirk, Danner & Phelps, for plaintiff in error.

Everest, Dudley & Brewer, for defendant in error.

BENNETT, C. This is an appeal by plaintiff in error from a decree of the district court of Oklahoma county, Okla., granting defendant in error a judgment on the pleadings, and canceling a written contract entered into between the parties with reference to the removal of sand from certain lands. This contract would have expired by limitation August 7, 1940, unless extended or sooner terminated.

It is agreed between the parties that the sole issue depends upon the interpretation of the written contract attached to plaintiff's petition, the execution of which was admitted.

It is necessary that we should make a synopsis of the pleadings and set out in detail such parts of the contract as are required to be construed. The respective parties will be referred to as they appeared in the trial court.

Plaintiff's petition alleged that he was the owner and in possession of 70 acres of land (describing it) in Oklahoma county, Okla., and that on August 8, 1925, plaintiff and defendant entered into a written contract empowering the defendant to explore said property and take therefrom building sand for which plaintiff was to be paid 15 cents per cubic yard for all sand removed from said premises during the life of said contract, and providing that if the yardage of sand so removed at said price did not pay plaintiff at least $500 per year during the life of said contract, the deficit was to be paid plaintiff by said defendant; that the contract period was to extend from August 8, 1925, to and including August 7, 1940; that the defendant was given the right to make tests on the premises under promise that, if same were satisfactory, immediate operations would start for removing sand; but that defendant has failed to operate the premises for the purpose intended; that the contract contemplated that the property was to be fully developed and the product marketed, but that defendant refused and neglected so to develop, or to use the property, and has refused to pay the $500 rental per year as provided for in the contract, or any part thereof, for the first two years, and that plaintiff has given defendant written notice through the United States mail that, unless such payments were made, suit would be brought to cancel said contract; that, by reason of defendant's failure to develop and pay rental, said contract should be canceled.

The lease is very long, but the pertinent and controlling portions of the same are as follows:

"Without restriction, location or limitation, the lessee be and is hereby given the right, authority and power to make such test or tests for commercial sand deposits as in his judgment will be reasonably practicable, and if such tests and testing developments reveal to his satisfaction that the deposits or beds can be developed or pumped profitably, he shall and will on or before the expiration of five years from the date hereof place on a

location or locations selected by him such equipment, machinery, and appliances as is now or at the time will be in general use to expeditiously and profitably pump or in any other manner remove the same from the beds, pits or deposits, and which shall include provis ons for moving the same from the place where removed to a point of general transportation, whether the same be steam, electric or other general transportation facilities. If, after such tests and testing developments shall have been made, as in this paragraph referred to, the lessee should find that further development would be unprofitable' for either inferior quality of sand or insufficient quantity, or for any other reason, he then and thereupon and upon the reaching of such conclusion, be and is hereby given the right and privilege of relieving himself from any other or further liability hereunder by giving the lessor a notice in writing, effective upon the day and date of the giving of such written notice, either in person or by mail.

"The lessee has and does hereby covenant that he will pay the lessor the sum of 15 cents per cubic yard for all sand removed from any part or portion of the real estate described and sold in due and regular course of business, whether the same be removed and sold during times and periods of tests or development tests, or after quantity and quality have been determined and full equipment installed to make removal of deposits in such way as will be in keeping with the requirements of the orders therefor received, but nothing contained in this contract shall require of and from the lessee to pump, or otherwise remove and sell a minimum number of cubic yards within any given or fixed time, or at any time. In the event yardage removed should not yield the lessor on a basis of 15 cents per cubic yard, the aggregate during a period of each succeeding calendar months hereafter, the lessee be and is hereby nevertheless bound and required to pay the lessor the sum of $500 for each and every 12 calendar months during the life of this contract, as a minimum royalty, and if the basic royalty of 15 cents per cubic yard should yield less than $500 per each 12 calendar months during the life hereof, the difference between the total of such royalty and the minimum royalty of $500 shall and will be paid at the end of each 12 months period, or fractional part thereof, during the time this lease remains in force and effect."

Exhibit B, attached to plaintiff's petition, is a formal notice addressed by plaintiff to lessee describing the lease, the land covered thereby, and making demand for $500 rental due for each of the first two twelve-month periods covered by said lease contract. The notice provides that failure to pay such rent will be followed by an action to set aside the lease.

Defendant's answer admits the execution of the lease attached to plaintiff's petition; all other parts of the petition are denied. Defendant specially denies any breach of the terms of such lease, and alleges that he had the right to make such tests for sand for commercial purposes as in his judgment should be necessary to justify the removal of sand therefrom and to place machinery and equipment on the premises for such purpose, and that after such tests were satisfactory, the defendant was to have five years within which to install equipment for removal of the sand; that defendant did make tests, and by reason whereof he has until August 8, 1930, within which time to install machinery for handling the sand; that defendant agreed to pay plaintiff 15 cents per cubic yard for all sand removed from said premises during regular course of business, whether same was removed and sold during test periods or thereafter, but the defendant was not required to remove a minimum quantity at any time, or within any particular period, but whatever sand should be removed plaintiff be entitled to a royalty of 15 cents per cubic yard thereon, and in the event royalties on the basis of 15 cents should not aggregate $500 for each and every calendar 12 months during the life of the contract, the defendant obligated himself to pay the difference between the aggregate on the basis of 15 cents per cubic yard for a period of 12 months and $500, as the minimum royalty was and is by such contract fixed at said sum for each period of 12 months.

That subsequent to the tests made by defendant during the latter part of 1925, he has not equipped any appliances or machinery for the removal of sand in commercial quantities, has made no sample of any sand whatever as he has until August 8, 1930, within which time to establish such machinery, and until such act is done, no royalty whatever is due plaintiff.

Plaintiff countered by motion for judgment on the pleadings for that the answer admitted all the material allegations of the plaintiff's petition. This motion was sustained and judgment rendered for plaintiff canceling the lease contract, quieting plaintiff's title to said premises as against the defendant's claim under said canceled lease from which defendant appeals.

It appears from the pleadings that no issue of fact is involved here. The execution of the written contract is admitted. No point is made that proper notice was not given defendant with reference to the default in the amount claimed by plaintiff to be due him by

defendant under the contract. So the controversy seems to be narrowed down to the one controlling determinative issue: Was the plaintiff entitled under this written contract to collect from the defendant a minimum rental of $500 per year, and if so, at what time did this obligation begin?

It is not contended by defendant that the minimum rental or royalty of $500 per year is not called for in the contract, but that same was not to be paid until the expiration of five years following the making of the lease, unless machinery was placed on the premises and sand was sold in due and regular course of business, in which event the minimum rent or royalty provision of $500 per annum would then become effective and enforceable. Defendant contends that the contract is free from ambiguity and uncertainty. The plaintiff, on the other hand, claims that the minimum rental or royalty was to be payable yearly from and after the execution of the contract, and the plaintiff is equally sure of his position that the contract is neither ambiguous nor uncertain. It is worth noting at this juncture that neither party alleges or claims any mistake or overreaching, and there is reflected in the pleadings no request to have the contract reformed as not correctly evidencing the intentions of the contracting parties.

In such circumstances it becomes the duty of the court to determine what were the commitments of the parties under the written obligation. This is to be found by taking the contract by its four corners and giving the language therein its ordinary meaning or interpretation. It is also a rule of construction that all of the terms of a written contract are to be given consideration and effect, unless to do so would bring about an absurd result. It is to be presumed that parties designedly used the language of the contract for the purpose of expressing their intention. It is again a proper rule of construction that, in interpreting the terms of a written instrument, a liberal and fair construction will be given to the words either singly or in connection with the subject-matter. It has been said that the best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is only where the language in which the parties have expressed themselves renders their intention doubtful, that the courts may resort to conjecture to determine such intention.

With these rules in mind, what was the intention of the parties in this case with reference to the payment of the minimum of $500 annually designated as rent or royalty? A painstaking reading of this instrument convinces us that this minimum rent or royalty was to be paid at the expiration of each year following the execution of the lease. Several reasons might be given for this conclusion: First, the lease in terms seems to so provide.

We shall direct attention to the three underscored clauses in the second paragraph of the above quotation taken from the lease. What does the clause "the lessee be and is hereby nevertheless bound and required to pay the lessor the sum of Five Hundred Dollars ($500.00) for each and every twelve calendar months during the life of this contract, as a minimum royalty" mean, unless it contemplates just what it says? What is the life of the contract? Does it not begin at the date of its execution? Is this an ambiguity or an uncertainty, or does it lead to an absurdity? The same thought is repeated three lines below in the same paragraph: "and if the basic royalty of 15 cents per cubic yard should yield less than $500 per each 12 calendar months during the life hereof, the difference between the total of such royalty and the minimum royalty of $500 shall and will be paid at the end of each 12 months period," etc. What can the words "during the life hereof" mean but the full term of the contract beginning with its execution? The same thought is reiterated in the latter part of the same paragraph as follows: "and the minimum royalty of $500 shall and will be paid at the end of each 12 months period, or fractional part thereof, during the time this lease remains in force and effect." It is hardly possible to conceive of this language as having been directed at any period other than the entire effective period of the contract beginning with the date of its execution. The three expressions underscored above are used in the same paragraph and follow the provision that 15 cents per cubic yard for all sand removed from the premises, whether the same be removed and sold during the time and period of the tests or development or after quantity and quality have been determined and after full equipment has been installed, etc., which indicates, we think, clearly, that not only the 15 cents per cubic yard payment was to be operative throughout the life of the lease—that there was no break therein with respect thereto, but that provision is also tied into the other provisions dealing with the assurance to the lessor that he would receive a minimum rental or royalty

payable yearly and with reference to which the lease shows no break. This construction does not lead us to an absurdity, nor to a contradiction in terms, but permits to stand every word, phrase, sentence, and paragraph of the lease, giving to the words thereof their ordinary meaning.

Reason also would seem to support this construction. If we should adopt the construction contended for by defendant, this situation would follow: Plaintiff gave the defendant dominion over his land for five years with unlimited right to remove the soil, the gates, the guards, the fences, to dig pits and quarries, to use the waters on the land, to make tests to his own satisfaction, and to develop or not to develop, as best suited his pleasure, and if he, on account of inferior sand or lack of sand, "or for any other reason," concluded that it would not profit him, he had the privilege of abandoning the land at any time, without further liability, without even filling the excavations thereon or replacing the improvements or paying to the owner a single dollar for the rights enjoyed for such a term or to compensate plaintiff for his damage. Such a contention and construction, in the light of the plain words of this contract and the apparent purpose of it, does not appeal to us. We think it clear that the plaintiff was not leaving entirely to the caprice or choice of defendant, without compensation, to test or not to test, or to develop or not to develop, this land. It would be a strange contract which turned over plaintiff's land to defendant for a period of five years without compensation and with simply the option, but no obligation on the part of defendant, to either test it or develop it. The provision in the lease for the payment of a minimum rent or royalty of $500 per year was about the only incentive the defendant had in making prompt development, and likewise was about the only consideration to the plaintiff for tying up his land in a long term. This provision did not increase the burdens of defendant if he made prompt development and sold any considerable amount of sand, nor, in such event, did it increase the revenues of the plaintiff, for the basic rate, if much sand were sold, would take care of this item.

It should be noted also that at all times the defendant had the right to terminate the contract by notifying plaintiff to that effect, and all further liability of defendant would cease and the defendant had the right to remove from the premises his machinery and equipment. Plaintiff was to pay taxes on the land and the defendant upon his equipment.

Defendant contends that the use of the phrase in the contract that "the minimum royalty of $500 shall and will be paid at the end of each 12 months period, or fractional part thereof, during the time this lease remains in force and effect" shows that the $500 was not to be payable during the test period or period of five years, because, as the defendant contends, the words with reference to the fractional portion of a year would be meaningless. We find that they are full of meaning, since the defendant had the right, at his own option, to terminate at any time the lease and to be relieved from any **further liability.**

Defendant next contends that plaintiff's failure to demand or sue for the minimum royalty or rental at the end of the first year is an interpretation of the lease which should now preclude plaintiff. There is nothing before us to show what, if any, effort plaintiff made before bringing suit, to collect this money, or to cancel the lease, other than the giving of notice hereinbefore referred to. There is nothing in the acts or attitude of plaintiff that should prevent him from receiving the benefits of his written contract. The defendant has not been misled thereby to his hurt. The construction of the parties is hardly necessary here when each party contends that the contract is unambiguous and clear in its terms and where the court is of similar view. The parties have committed their intentions to writing; the words are simple and consistent. If defendant had conceived that the writing did not reflect the contract, or that there was some mistake or overreaching in the execution thereof, doubtless his pleading would have reflected the same and his prayer would have been to reform the contract. That has not been and is not his contention.

Defendant has submitted to us several cases but they are not controlling. Cases of this kind must depend largely upon their own peculiar pleadings and the provisions of the contract.

Defendant also comments upon the use of the word "royalty" as used in the contract as distinguished from the word "rent." What the parties chose to call the compensation to be received by plaintiff under the facts of this case would be immaterial, and we regard the contention as purely technical.

We have carefully gone over the record and the contract, and in the light of the rules of interpretation to which we have re-

ferred, we hold that the judgment of the trial court upon the pleadings in behalf of plaintiff was not error and such judgment is affirmed.

TEEHEE, LEACH, HERR, and DIFFEN-DAFFER, Commissioners, concur.

By the Court: It is so ordered.